Pancoast v. Geishaker.

---

DAVID J. PANCOAST et al., appellants,

*v.*

ADELAIDE E. GEISHAKER et al., respondents.

[Filed June 19th, 1899.]

1. Thornton W. Fay held the legal title to land in trust for the complainants, and then mortgaged the land for his own benefit to one who had no notice of the trust.—*Held*, that on a bill to foreclose the mortgage, to which

Fay was a party, but the *cestuis que trust* were not, the decree did not bar the latter, nor did a sale under the decree made to purchasers who had notice of the trust.

2. Besides the circumstances above mentioned, Fay owned a share of the land in his own right, and the price paid for his share by the purchasers at the foreclosure sale was more than sufficient to satisfy the mortgage —*Semble*, that as against the purchasers the estate of the *cestuis que trust* was discharged from the mortgage.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *Geishaker* v. *Pancoast, 12 Dick. Ch. Rep. 60.*

*Mr. David J. Pancoast,* for the appellants.

*Mr. John J. Crandall,* for the respondents.

The opinion of the court was delivered by

DIXON, J.

In 1880 Cyrus J. Fay died intestate, seized of the land now in controversy, and leaving nine children his heirs, two of whom are the present complainants. In 1885 one of his sons filed a bill for partition, in pursuance of which the land was sold, and another of the sons, Thornton W. Fay, acting for himself, the complainants and four other brothers and sisters, bought the land, paying therefor by the acquittances of the beneficiaries and cash advanced by them. Thus a trust resulted, and Thornton became trustee for the complainants as to two-sevenths of the land. This trust the complainants now seek to have established and enforced, but the defendants insist that it has been extinguished.

In December, 1893, Thornton borrowed $500 from Daniel M. Stout, and to secure repayment thereof gave him a mortgage on this land. Stout is not shown to have had notice of the trust, and therefore, to the extent of his rights as mortgagee, he stands as a *bona fide* purchaser for value without notice, a position which in general precludes the hostile interference of a court of equity. *2 Pom. Eq. Jur.* § *591.* This, however, did

not extinguish the trust estate, for there remained in the *cestuis que trust* an equity of redemption.

In February, 1896, Stout filed a bill in chancery to foreclose his mortgage, but did not make these complainants parties. On that bill the chancellor decreed that the property should be sold, and that the defendants in the suit should be debarred and foreclosed of and from all equity of redemption of, in and to so much of the mortgaged premises as should be sold by virtue of the decree. Under this decree David J. Pancoast purchased the property, in August, 1896, for $1,115.

The defendants contend that by these proceedings the complainants' equity of redemption was foreclosed.

The effect of these proceedings must be considered in two aspects—*first*, their effect because of the decree; *second*, their effect because of the sale.

Evidently the language of the decree did not reach the complainants, for it embraced only the defendants in the suit, and these persons were not defendants. But Thornton, their trustee, was a defendant, and hence the question arises whether he did not so represent the *cestuis que trust* that by barring him they also were barred.

On this subject the equitable rule is thus stated in *1 Dan. Ch. Pr.:*

"All persons materially interested in the subject [of the suit] ought generally, either as plaintiffs or defendants, to be made parties to the suit" (*p. 182*). "In every suit all the persons who have legal rights in the subject in dispute, as well as the persons having the equitable right, should be made parties to the proceedings" (*p. 184*). "Where an individual is in the actual enjoyment of the subject-matter, or has an interest in it either in possession or expectancy, which is likely either to be defeated or diminished by the plaintiff's claims, in such cases he has an *immediate* interest in resisting the demand, and all persons who have such immediate interests are necessary parties to the suit" (*p. 228*).

Subject to certain exceptions not here pertinent,

"the rule is that all *cestuis que trust* are necessary parties to suits against their trustees, by which their rights are likely to be affected" (*p. 250*). "The rule which requires that all *cestuis que trust* should be before the court in suits relating to trust property, applies to resulting trusts as well as others" (*p. 256*).

To the same effect are *Story Eq. Pl.* §§ *193, 197, 207*, and *Calv. Part. 208*. In *Haines* v. *Beach, 3 Johns. Ch. 459*, Chancellor Kent reviewed with approval many of the preceding cases, which supported the doctrine that all persons who, at the time of filing a bill to foreclose, have a right to redeem must be made parties to the bill or else they will not be bound by the decree. See, also, *Williamson* v. *Field, 2 Sandf. Ch. 533, 618*. Nor does the fact that Stout, the complainant in the foreclosure now under consideration, did not know of the right existing in the *cestuis que trust*, prevent the enforcement of this rule. *Godfrey* v. *Chadwell, 2 Vern. 601*, and *Morret* v. *Westerne, 2 Vern. 663*, were cases in which want of notice was adjudged to be unimportant, and the same view was expressed by Chancellor Kent in *Haines* v. *Beach, ubi supra*, and was assumed by Chief-Justice Beasley in *Wood* v. *Stover's Administrator, 1 Stew. Eq. 248*.

This general equitable rule has been in great measure abrogated in New Jersey by section 78 of the Chancery act (*Gen. Stat. p. 387*), but that statute does not reach parties who possess rights not evidenced by any instrument legally capable of being recorded, registered, entered or filed in any public office in the state, and therefore is inapplicable to the present case.

It thus appearing, then, that in order to foreclose the equity of the present complainants, not only their trustee, but also they themselves, should have been brought into court, it follows that they were not barred by any force inherent in the decree which Stout obtained.

It remains to consider the effect of the sale to Pancoast.

As above stated, a court of equity will not in general assail the title of one who is a *bona fide* purchaser for value without notice. But Pancoast does not occupy that position. He was the master in chancery by whom the sale in partition above mentioned was made in 1885, and received the acquittances of these complainants for two-sevenths of the purchase-money, in consideration of which he conveyed the property to Thornton. He also was solicitor of the complainants in a suit brought in 1892 by the representatives of one of the *cestuis que trust* claiming under the same transaction, and doubtless in that suit

learned, if he did not already know, all the circumstances of
the case.   Therefore, when in 1896 he purchased the property
at Stout's foreclosure sale, he had abundant notice that there
was still outstanding the equity of redemption of the present
complainants, and that equity remained, notwithstanding his
purchase.

In making this purchase Pancoast acted in behalf of Louise
Fay, Roy Alton Fay and Gladys Fay Fillebrown, and on Janu-
ary 16th, 1897, he transferred the title to them, receiving back
from them a mortgage for a debt which they owed him.   These
persons also had full notice of the complainants' equity; for
they are the widow and children of one of the *cestuis que trust,*
and were the complainants in the suit (to which reference has
just been made) instituted in 1892 for the enforcement of their
equitable rights against Thornton, as trustee.

This suit gave rise to another conveyance, on which these de-
fendants stand.   It resulted in a decree for costs against Thorn-
ton in favor of the then complainants, and on that decree a writ
of *fieri facias* issued out of chancery February 10th, 1896, under
which, on April 3d, 1896, the sheriff of Atlantic county con-
veyed the premises now in question to David J. Pancoast; and
this title also passed to Louise, Roy and Gladys by the deed of
January 16th, 1897.   But as Thornton was the only defendant
in that suit, and Pancoast, the purchaser, and his grantees the
then complainants, all had notice of the rights of the present
complainants, this title is bound by the trust as fully as if it had
remained in Thornton; for, as Lord Redesdale said in *Adair* v.
*Shaw, 1 Sch. & Lef. 243,* "trusts are enforced not only against
those persons who rightfully are possessed of the trust property
as trustees, but also against all persons who come into possession
of the property bound by the trust, with notice of the trust."

It thus becomes manifest that the present holders of the title—
Louise, Roy and Gladys—the owners of the legal fee, and Pan-
coast, the mortgagee, are in no better condition, with respect to
the complainants' equity, than Thornton himself would be if he
held their title, except so far as under the Stout foreclosure they
became *quasi*-assignees of the Stout mortgage, which as to the

Pancoast v. Geishaker.

complainants is still an unforeclosed mortgage. These holders, together with Thornton and the husband of Gladys, are the present defendants, and consequently their rights and obligations, in their twofold character, as assignees of Thornton with full knowledge of his obligations to the complainants, and as assignees of Stout, who was entitled to be protected as mortgagee against those obligations, are now before us for adjudication.

Thornton having received all the money for which the mortgage was given, his equitable estate in the land, whether possessed by him at the time he gave the mortgage or subsequently acquired, was primarily chargeable with the mortgage debt, and the estate of the complainants was only secondarily liable. When he bought at the partition sale in 1885 he was entitled to only one-seventh of the property, but when he executed the mortgage, or at any rate when the foreclosure took place, he seems to have become entitled to five-sevenths, through settlement with four of his brothers and sisters. In equity, therefore, if the present complainants had been made parties to the foreclosure, they might have had the decree so framed that five-sevenths of the property would be first sold, and if the amount due on the mortgage, with costs, was thereby raised, their share would be freed from the charge. According to the decree the amount then due for principal, interest and costs was $628.49. At the sale Pancoast bid $1,115. Assuming that his bid represented the value of the whole property (although, strictly speaking, he must be deemed to have known that he was not buying the complainants' equity), still five-sevenths of it would be worth $795, more than enough to satisfy the mortgage.

These considerations indicate that Stout's mortgage really and in substance imposed no injurious lien on the complainant's equitable estate, and none of these defendants has under it any just claim to interfere with their rights. As to them the mortgage should be regarded as satisfied, and their equitable estate should be established and enforced.

The relief afforded to them by the decree below is less than that to which in our opinion they are entitled, but as they have

not appealed, no modification of the decree in their favor can regularly be made.

The defendants, who are now the appellants, have no cause for complaint, and as against them the decree below should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, NIXON, VREDENBURGH—13.

*For reversal*—None.